## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MACK L. CHARLES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Civil Action No. 1:15-cv-00121 (RJL) |
| | ) |
| JOHN O. BRENNAN, Director of | ) |
| the Central Intelligence Agency, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant John O. Brennan, Director of the Central Intelligence Agency (CIA), hereby moves to dismiss Plaintiff Mack L. Charles' Amended Complaint under Federal Rules of Civil Procedure 12(b)(1), (3) and (6). Defendant has submitted a memorandum of points and authorities and a proposed order with this motion.

Dated: June 18, 2015

Respectfully submitted,

BENJAMIN C. MIZER
Acting Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney

JOSHUA E. GARDNER
Assistant Branch Director

*/s/ Ryan B. Parker*
RYAN B. PARKER (UT Bar No. 11742)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Telephone: (202) 514-4336
Email: ryan.parker@usdoj.gov

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MACK L. CHARLES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:15-cv-00121 (RJL) |
| | ) |
| JOHN O. BRENNAN, Director of | ) |
| the Central Intelligence Agency, *et al*., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

## TABLE OF CONTENTS

INTRODUCTION...................................................................................................... 1

BACKGROUND ...................................................................................................... 3

STANDARDS OF REVIEW ...................................................................................... 6

    **I.**     **Federal Rule of Civil Procedure 12(b)(1)**........................................... 6

    **II.**     **Federal Rule of Civil Procedure 12(b)(3)**........................................... 6

    **III.**     **Federal Rule of Civil Procedure 12(b)(6)**........................................... 7

ARGUMENT ............................................................................................................ 8

    **I.**     **Plaintiff's Complaint Should Be Dismissed for Improper Venue** ................... 8

        A.     Venue Is Not Proper In the District of Columbia. ..................................... 8

        B.     Transfer to the Eastern District of Virginia Is Not in the Interest of Justice .................................................................................................... 11

    **II.**     **Plaintiff Failed to Exhaust a Retaliatory Hostile Work Environment Claim** ................................................................................................... 13

    **III.**     **Plaintiff's Retaliation Claim is Time-Barred.** ................................... 16

        A.     It is Undisputed That Plaintiff Did Not File within the Limitations Period. ................................................................................................... 16

        B.     Equitable Tolling Is Not Appropriate ...................................................... 17

    **IV.**     **Plaintiff Has Failed to State a Hostile Work Environment Claim.** ................. 21

    **V.**     **Because the Court Cannot Award the Relief Plaintiff Seeks, He Lacks Standing to Pursue His Claims.** ......................................................... 24

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Akers v. Gutierrez*,
   Case No. 07-cv-266, 2007 WL 1541500 (D.D.C. 2007) ........................................................ 11

*Al-Saffy v. Vilsack*,
   54 F. Supp. 3d 79 (D.D.C. 2014) ........................................................................................... 14

*Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*,
   922 F. Supp. 2d 56 (D.D.C. 2013) ........................................................................................... 7

*Artis v. Greenspan*,
   223 F. Supp. 2d 149 (D.D.C. 2002) .......................................................................................... 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................... 7

*Backhanon v. Huff & Assoc. Constr. Co.*,
   506 F. Supp. 2d 958 (M.D. Ala. 2007) .................................................................................... 24

*Baloch v. Kempthorne*,
   550 F.3d 1191 (D.C. Cir. 2008) .............................................................................................. 22

*Baloch v. Norton*,
   517 F. Supp. 2d 345 (D.D.C. 2007) ....................................................................................... 22

*Barr v. Clinton*,
   370 F.3d 1196 (D.C. Cir. 2004) ................................................................................................ 6

*Boultinghouse v. Lappin*,
   816 F. Supp. 2d 107 (D.D.C. 2011) ....................................................................................... 13

*Buchanan v. Manley*,
   145 F.3d 386 (D.C. Cir. 1998) ................................................................................................ 12

*Childs-Pierce v. Util. Workers Union of Am.*,
   383 F. Supp. 2d 60 (D.D.C. 2005) ......................................................................................... 15

*Clay v. Howard University.*,
   ---F. Supp. 3d---, 2015 WL 1061559 (D.D.C., Mar. 11, 2015) ................................................ 7

*Dahlman v. AARP*,
   791 F. Supp. 2d 68 (D.D.C. 2011) .................................................................................... 17, 18

*Darby v. U.S. Dep't of Energy*,
   231 F. Supp. 2d 274 (D.D.C. 2002) ......................................................................................... 6

*Dudley v. WMATA,*,
   924 F. Supp. 2d 141 (D.D.C. 2013) ....................................................................................... 23

*E.E.O.C. v. St. Francis Xavier Parochial Sch.*,
   117 F.3d 621 (D.C. Cir. 1997) .................................................................................................. 7

*Fortune v. Holder*,
   767 F. Supp. 2d 116 (D.D.C. 2011) ....................................................................................... 12

*Freeman v. Fallin*,
   254 F. Supp. 2d 52 (D.D.C. 2003) ........................................................................................... 7

*Gill v. D.C.*,
   872 F. Supp. 2d 30 (D.D.C. 2012) .................................................................................... 16, 21

*Gladden v. Bolden*,
   802 F. Supp. 2d 209 (D.D.C. 2011) ....................................................................................... 13

*Goldlawr, Inc. v. Heiman,*
    369 U.S. 463 (1962) ........................................................................................ 11
*Gupta v. Northrop Grumman Corp.,*
    462 F. Supp. 2d 56 (D.D.C. 2006) .................................................................. 18
*Hill v. Napolitano,*
    839 F. Supp. 2d 180 (D.D.C. 2012) ................................................................ 10
*Kennedy v. Whitehurst,*
    690 F.2d 951 (D.C. Cir. 1982) ........................................................................ 17
*Koch v. Schapiro,*
    699 F. Supp. 2d 3 (D.D.C. 2010) .................................................................... 13
*Land v. Dollar,*
    330 U.S. 731 (1947) .......................................................................................... 6
*Laukus v. United States,*
    691 F. Supp. 2d 119 (D.D.C. 2010), .............................................................. 11
*Lester v. Natsios,*
    290 F. Supp. 2d 11 (D.D.C. 2003) .................................................................. 22
*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................ 24
*Marbury Law Grp., PLLC v. Carl,*
    No. 09-cv-1402, 2013 WL 4583558 (D.D.C. July 21, 2013) ........................ 21
*McAlister v. Potter,*
    733 F. Supp. 2d 134 (D.D.C. 2010) ................................................................ 16
*Menominee Indian Tribe of Wis. v. United States,*
    764 F.3d 51 (D.C. Cir. 2014) .................................................................... 17, 18
*Miller v. Rosenker,*
    578 F. Supp. 2d 67 (D.D.C. 2008) .................................................................. 18
*Mohasco Corp. v. Silver,*
    447 U.S. 807 (1980) ........................................................................................ 16
*Mondy v. Sec'y of Army,*
    845 F.2d 1051 (D.C. Cir. 1988) ...................................................................... 17
*Mount v. Johnson,*
    36 F. Supp. 3d 74 (D.D.C. 2014) .................................................................... 14
*Naartex Consulting Corp. v. Watt,*
    722 F.2d 779 (D.C. Cir. 1983) ........................................................................ 11
*Nestor v. Hershey,*
    425 F.2d 504 (D.C. Cir. 1969) .......................................................................... 9
*Pace v. DiGuglielmo,*
    544 U.S. 408 (2005) ........................................................................................ 17
*Park v. Howard Univ.,*
    71 F.3d 904 (D.C. Cir. 1995) .................................................................... 14, 15
*Patterson v. Johnson,*
    391 F. Supp. 2d 140 (D.D.C. 2005) ................................................................ 23
*Pendleton v. Mukasey,*
    552 F. Supp. 2d 14 (D.D.C. 2008) .................................................................... 6
*Perry v. U.S. Dep't of State,*
    669 F. Supp. 2d 60 (D.D.C. 2009) .................................................................. 18

*Peter B. v. CIA*,
  620 F. Supp. 2d 58 (D.D.C. 2009) .................................................................. 9

*Phillips v. Seiter*,
  173 F.3d 609 (7th Cir. 1999) ....................................................................... 12

*Price v. Bernanke*,
  470 F.3d 384 (D.C. Cir. 2006) ..................................................................... 16

*Rann v. Chao*,
  346 F.3d 192 (D.C. Cir. 2003) ..................................................................... 14

*Rattigan v. Gonzales*,
  503 F. Supp. 2d 56 (D.D.C. 2007) ................................................................ 23

*Rattner v. Bennett*,
  701 F. Supp. 7 (D.D.C. 1998) ...................................................................... 24

*Reuben H. Donnelley Corp. v. FTC*,
  580 F.2d 264 (7th Cir. 1978) ....................................................................... 10

*See, e.g., Holland v. Fla.,*,
  560 U.S. 631 (2010) ............................................................................. 19, 22

*Settles v. U.S. Parole Comm'n*,
  429 F.3d 1098 (D.C. Cir. 2005) ..................................................................... 6

*Shipman v. Vilsack*,
  692 F. Supp. 2d 113 (D.D.C. 2010) .............................................................. 22

*Smith v. Dalton*,
  971 F. Supp. 1 (D.D.C. 1997) ................................................................. 16, 20

*Smith v. Office of Pers. Mgmt.*,
  778 F.2d 258 (5th Cir. 1985), ...................................................................... 24

*Smith-Haynie v. D.C.*,
  155 F.3d 575 (D.C. Cir. 1998) ..................................................................... 17

*Spannaus v. Fed. Election Comm'n*,
  990 F.2d 643 (D.C. Cir. 1993) ( ............................................................... 19, 20

*Speelman v. United States*,
  461 F. Supp. 2d 71 (D.D.C. 2006) ................................................................. 6

*Thomas v. Sotera Def. Solutions, Inc.*,
  40 F. Supp. 3d 181 (D.D.C. 2014) ................................................................. 3

*Trudeau v. FTC*,
  456 F.3d 178 (D.C. Cir. 2006) ...................................................................... 7

*Turner v. Afro-Am. Newspaper Co.*,
  572 F. Supp. 2d 71 (D.D.C. 2008) ................................................................ 20

*Vasser v. McDonald*,
  --- F. Supp. 3d ---, 2014 WL 5581113 (D.D.C. 2014) ........................................... 8

*Vazquez-Rivera v. Figueroa*,
  759 F.3d 44 (1st Cir. 2014) ..................................................................... 18, 19

*Ware v. Hyatt Corp.*,
  --- F. Supp. 3d ----, 2015 WL 739857 (D.D.C. Feb. 23, 2015) ................................. 21

*Williams v. GEICO Corp.*,
  792 F. Supp. 2d 58 (D.D.C. 2011) .................................................................. 7

*Wilson v. Dep't of Transp.*,
  759 F. Supp. 2d 55 (D.D.C. 2011) .................................................................. 8

*Wilson v. Libby*,
    535 F.3d 697 (D.C. Cir. 2008) ............................................................................... 13

**Statutes**

28 U.S.C. § 1391 ................................................................................................................. 9

28 U.S.C. § 1391(e) .............................................................................................. 8, 9, 10, 11

28 U.S.C. § 1406(a) ........................................................................................................... 11

28 U.S.C. § 1400(a) ............................................................................................................. 9

29 U.S.C. § 633a ............................................................................................................ 1, 25

29 U.S.C. §§ 633a(b) ........................................................................................................ 14

29 U.S.C. §§ 633a(c) ......................................................................................................... 14

29 U.S.C. §§ 633a(d) ........................................................................................................ 14

42 U.S.C. § 2000e et seq. ..................................................................................................... 5

**Rules**

Federal Rule of Civil Procedure 12(b)(1) .............................................................. passim

Federal Rule of Civil Procedure 12(b)(3) ................................................................... 6, 12

Federal Rule of Civil Procedure 12(b)(6) .............................................................. 7, 13, 24

### INTRODUCTION

Plaintiff Mack L. Charles, a former covert officer at the Central Intelligence Agency (CIA), has filed an amended complaint in this action alleging that the CIA violated the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 633a, by retaliating against him for complaining of age discrimination by creating a hostile work environment.  As relief, Plaintiff seeks reinstatement, with retroactive promotions, salary, and benefits; back pay; and liquidated damages, in an amount to be calculated at trial.  Plaintiff's claim should be dismissed for a number of independently dispositive reasons.

First, the District of Columbia is not the proper venue for this action.  Under the applicable venue provision, an ADEA claim against a government agency may be brought in a judicial district (1) where the defendant resides, (2) where the events or omissions that gave rise to the claim occurred, or (3) where the plaintiff resides.  Plaintiff does not claim that the alleged retaliation occurred in the District or that he resides in the District.  Instead, he claims that venue is proper in this District because Director Brennan performs a significant amount of his official duties in the District of Columbia.  But the official residence of an agency head who is sued in his or her official capacity is the agency headquarters, and the CIA is headquartered in Langley, Virginia.  As this case lacks the requisite connections to this District, it should be dismissed for improper venue.

Second, Plaintiff has failed to exhaust his administrative remedies for his sole claim of a retaliatory hostile work environment.  Plaintiff has administratively exhausted a single claim that the CIA retaliated against him for complaining of age discrimination by convening a Personnel Board on false grounds.  Plaintiff, however, has not brought that claim in his Amended Complaint.  Instead, he has filed a claim alleging that the CIA retaliated against him for

complaining about age discrimination by creating a hostile work environment.  As Plaintiff has not administratively exhausted a retaliatory hostile work environment claim, that claim is not properly before the Court, and the sole claim he advances in this litigation should be dismissed.

Third, the only claim that Plaintiff has exhausted – his claim that the CIA retaliated against him by convening a Personnel Board on false grounds – is time barred.  Plaintiff concedes in his Amended Complaint that he did not file this suit within the statutorily-required 90 days of receiving the Equal Employment Opportunity Commission's (EEOC's) Notice of Right to Sue letter.  ECF No. 15 at ¶122.  Rather, Plaintiff waited nearly two months after the 90-day deadline had passed to file his initial Complaint.  Because Plaintiff has failed to allege the type of exceptional circumstances necessary to justify equitable tolling, dismissal is required.

Fourth, even if his claim were properly exhausted and otherwise timely, Plaintiff has failed to state a hostile work environment claim under the ADEA.  In his Amended Complaint, Plaintiff alleges discrete acts of discrimination, including that the Agency convened a Personnel Board against him, that the CIA interfered in his relationship with his fiancée, and that the Agency did not permit him to publish his novel.  But a Plaintiff must do more than aggregate a handful of allegations of discrete acts of discrimination to allege a viable hostile work environment claim.  To properly plead a viable hostile work environment claim, a plaintiff must allege discriminatory actions that are sufficiently severe or persuasive to alter the terms and conditions of the plaintiff's employment and create an abusive work environment.  Plaintiff's Amended Complaint falls far short of pleading such allegations.  In addition, two of the allegations upon which Plaintiff relies – that the CIA interfered in his relationship with his fiancée and refused to allow him to publish his novel – occurred after the Agency terminated his

employment and thus cannot form the basis of a hostile work environment claim as a matter of law.

Finally, Plaintiff lacks standing to pursue his retaliatory hostile work environment claim because his alleged injuries cannot be redressed by a favorable court decision. Plaintiff's claim for liquidated damages is barred by sovereign immunity, and he cannot properly seek reinstatement with retroactive promotions, salary, and benefits or back pay because he has not exhausted a claim regarding the termination of his employment. As the Court cannot grant Plaintiff relief for his alleged injuries, he lacks standing to pursue his retaliatory hostile work environment claim.

For all of these reasons, the Court should dismiss this action under Federal Rules of Civil Procedure 12(b)(1), (3) and (6).

## BACKGROUND[1]

Plaintiff is a former covert officer at the CIA. ECF No. 15 at ¶19. On June 10, 2009, he filed a formal complaint with the CIA's Office of Equal Employment Opportunity alleging age discrimination. *Id.* at ¶57. On August 5, 2009, Plaintiff's supervisors requested that a Personnel Board be convened to examine Plaintiff's employment record. *Id.* at ¶63. Plaintiff alleges that the Personnel Board request contained false and misleading statements. *Id.* at ¶65. Plaintiff was shown the allegedly false and misleading statements in September 2009, *id.* at ¶67, and then filed

---

[1] While the CIA does not concede the accuracy or merit of Plaintiff's allegations, the Background section of this Memorandum draws from the allegations in Plaintiff's Amended Complaint, as the Court, when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(1), 12(b)(3), or 12(b)(6), must accept a plaintiff's well-pled factual allegations as true. *See, e.g., Thomas v. Sotera Def. Solutions, Inc.*, 40 F. Supp. 3d 181, 183 (D.D.C. 2014) (explaining that, when evaluating motions to dismiss under Rules 12(b)(1) and 12(b)(3), "the court accepts the plaintiff's well pled factual allegations as true …").

the formal EEO complaint of retaliation that gave rise to this action, *id.* at ¶68.  The Personnel

Board deliberated in October 2009 and decided to take no action.  *Id.* at ¶¶72-73.

The Personnel Board met again in May 2010, *id.* at ¶89, and recommended that Plaintiff

be fired, *id.* at ¶92.  Plaintiff appealed the Board's recommendation but the Agency ultimately

terminated his employment in December 2010.  *Id.* at ¶93.  Plaintiff has never sought to

administratively exhaust any ADEA claim related to his termination.  Plaintiff alleges that in

March 2011, months after his termination, his former manager ordered Plaintiff's fiancée, who

was also a covert officer, to have no further contact with him. *Id.* at ¶97.  Plaintiff has never

sought to administratively exhaust an ADEA claim based on the allegations that his former

manager ordered Plaintiff's fiancée to have no further contact with him.

Plaintiff's EEO complaint raised a single basis for his retaliation claim: "Your client

claims discrimination based on reprisal when on 16 September 2009 he was informed that a

Personnel Evaluation Board (PEB) was being convened against him on false grounds put forth

by GDC management."  Exhibit 1, CIA Final Agency Decision, p.2.  On September 12, 2011,

the CIA's EEO office issued a final decision concluding that there was no direct evidence of

reprisal and that the Agency had provided legitimate non-discriminatory reasons for Plaintiff's

referral to the Personnel Board.  *Id.* at 29-30.  Plaintiff appealed the CIA's decision to the EEOC,

which denied his appeal on May 21, 2014, and denied his motion for reconsideration on August

28, 2014.  ECF No. 15-2.  The EEOC's denial of Plaintiff's motion for reconsideration informed

Plaintiff of the deadline for filing a lawsuit: "You have the right to file a civil action in an

appropriate United States District Court **within ninety (90) calendar days** from the date that you

receive this decision."  *Id.* at 2 (emphasis in original).

In January 2014, years after his termination, Plaintiff submitted a manuscript of a novel to the CIA's Publications Board for prepublication review.  ECF No. 15 at ¶101.  In May 2014, the Publications Board informed Plaintiff that he would not be able to publish his book, even if he used a pen name.  *Id.* at ¶105.  Plaintiff requested that the Publications Board reconsider its decision, and his request was denied in late August 2014.  *Id.* at ¶116.  Plaintiff has never sought to administratively exhaust an ADEA claim related to the Publications Board's decision.

Plaintiff alleges that, after receiving the EEOC's final determination and the Publications Board's reconsideration decision regarding his novel, he fell into "a deep depression, which he had experienced eight years previously when he was going through a divorce."  *Id.* at ¶121.  He then claims that his "depression rendered him incapable of handling his affairs in such a way as to be able to prepare his initial Complaint within the 90-day period specified in the EEOC's Notice of Right to Sue letter."  *Id.* at ¶122.  Plaintiff further alleges that, in early November 2014, he contacted an attorney but was told by the CIA that he would have to sign a new secrecy agreement before the attorney could be cleared to represent him.  *Id.* at ¶123.

 Plaintiff contends that, although he was allegedly unable to manage his affairs sufficiently to bring a timely complaint, he was, at some point, able to see a doctor.  *Id.* at ¶127.  In late November 2014, under the care of that doctor, Plaintiff began taking a prescribed antidepressant medication.  *Id.*  He subsequently experienced a recovery sufficient to enable him to prepare and file the initial Complaint.  *Id.* at ¶128.  On January 23, 2015, Plaintiff, who is an attorney, filed this *pro se* action alleging one claim of retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. and three related common law claims.  ECF No. 1.  After Defendants filed a fully-dispositive motion to dismiss, ECF No. 8, Attorney Victoria Toensing, who represented Plaintiff during much of the administrative

proceedings before the Agency and EEOC, entered an appearance as counsel of record for

Plaintiff, ECF No. 9.  On June 1, 2015, Plaintiff amended his Complaint, alleging a single claim

that the CIA violated the ADEA by retaliating against Plaintiff for complaining of age

discrimination by creating a hostile work environment.  ECF No. 15.

## **STANDARDS OF REVIEW**

### I.      **Federal Rule of Civil Procedure 12(b)(1)**

When considering a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a

court must review the complaint liberally, granting the plaintiff the benefit of all inferences that

can be derived from the facts alleged.  *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004).

Nevertheless, "the Court need not accept factual inferences drawn by plaintiffs if those

inferences are not supported by facts alleged in the complaint, nor must the Court accept

plaintiff's legal conclusions."  *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).

To determine whether it has jurisdiction over the claim, a court may consider materials outside

the pleadings.  *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005).

### II.     **Federal Rule of Procedure 12(b)(3)**

In considering a motion for improper venue under Federal Rule 12(b)(3), the Court

"accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable

inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the

plaintiff's favor."  *Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008) (citing *Darby v.

U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276-77 (D.D.C. 2002)).  The Court need not,

however, accept the plaintiff's legal conclusions as true, *see Darby*, 231 F. Supp. 2d at 277, and

may consider material outside of the pleadings.  *See Artis v. Greenspan*, 223 F. Supp. 2d 149,

152 (D.D.C. 2002) (citing *Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947)).  "Because it is the

plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003).  Unless there are "pertinent factual disputes to resolve, a challenge to venue presents a pure question of law." *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011).

### III.    Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss [under Rule 12(b) (6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). "The Court need not accept as true, however, 'a legal conclusion couched as a factual allegation,' nor an inference unsupported by the facts set forth in the Complaint." *Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013) (quoting *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)).  "In determining whether a complaint fails to state a claim, [a court] may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the Court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).  "If the facts as alleged, which must be taken as true, fail to establish that a plaintiff has stated a claim upon which relief can be granted, the Rule 12(b)(6) motion must be granted." *Clay v. Howard University*. ---F. Supp. 3d---, 2015 WL 1061559, *3 (D.D.C., Mar. 11, 2015).

## ARGUMENT

**I.     Plaintiff's Complaint Should Be Dismissed for Improper Venue**

As the events that gave rise to Plaintiff's claim did not occur in the District and neither

Plaintiff nor Director Brennan[2] resides in the District, this case should be dismissed for improper

venue.  Although this action could have been brought in the Eastern District of Virginia, where

Plaintiff Brennan resides, because of the fundamental flaws in Plaintiff's claim, it is not in the

interest of justice to transfer this case.

### A.     Venue Is Not Proper In the District of Columbia

The proper venue for an ADEA claim is governed by 28 U.S.C. § 1391(e), the general

venue statute for claims against the United States and its officers.  *See e.g., Vasser v. McDonald*,

--- F. Supp. 3d ---, 2014 WL 5581113, *7 (D.D.C. 2014) ("The ADEA lacks a specific venue

provision, so venue for the ADEA claims is governed by the general venue provision in 28

U.S.C. § 1391(e).").  That provision provides, in relevant part, that:

> A civil action in which a defendant is an officer or employee of the
> United States or any agency thereof acting in his official capacity
> or under color of legal authority, or an agency of the United States,
> or the United States, may, except as otherwise provided by law, be
> brought in any judicial district in which (1) a defendant in the
> action resides, (2) a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial part of the
> property that is the subject of the action is situated, or (3) the
> plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e).  As none of the three requirements set forth in §1391(e) is met here, venue

is not proper in the District of Columbia.

---

[2] Although the only proper defendant in a suit brought under the ADEA is the head of the
department or agency being sued, *see Wilson v. Dep't of Transp.*, 759 F. Supp. 2d 55, 67 (D.D.C.
2011), Plaintiff, in his Amended Complaint, lists the "Defendants" as Director Brennan, "*et al.*"
ECF No. 15.  To the extent Plaintiff is attempting to name any party other than Director Brennan
as a Defendant, that party should be dismissed from this action.

Plaintiff's Amended Complaint does not allege either that a substantial part of the events giving rise to his claims occurred in the District or that he resides in the District. Rather, Plaintiff appears to base his claim that venue is proper solely on his unadorned allegation that Director Brennan "performs a significant amount of his official duties in the District of Columbia." ECF No. 15 at ¶11. Plaintiff's thread-bare allegation is not sufficient to establish that venue is proper in the District.[3]

In examining §1391(e)'s residency requirement, the D.C. Circuit has explained that, "'[w]here a public official is a party to an action in his official capacity he resides in the judicial district where he maintains his official residence, that is where he performs his official duties.'" *Nestor v. Hershey*, 425 F.2d 504, 521 n.22 (D.C. Cir. 1969) (quoting 1 J. W. Moore, Federal Practice P0.142 (5.-2) (1964)). Because there is no dispute that the CIA's headquarters is in the Eastern District of Virginia, Director Brennan "resides" there—and not in the District of Columbia—for purposes of §1391(e). *See Peter B. v. CIA*, 620 F. Supp. 2d 58, 66 (D.D.C. 2009) (concluding that venue was proper in the District because of the Privacy Act's venue provision, but observing that the case could have been brought in the Eastern District of Virginia under 28 U.S.C. § 1391 because "the CIA resides in the Eastern District").

Plaintiff's attempt to establish venue in a District other than where Director Brennan officially resides is contrary to the plain meaning of the statute. Unlike venue statutes that allow suit in any district where a defendant "resides *or may be found*," *e.g.,* 28 U.S.C. §1400(a) (emphasis added), §1391(e) is expressly limited to the district where the defendant "resides." Interpreting the word "resides" to include not only the district where an agency is headquartered

---

[3] Plaintiff also points out that the CIA maintains a Washington, D.C. mailing address. ECF No. 15-1 at ¶ 13. But that mailing address is the equivalent of a post office box and in no way indicates that the Director "resides" in the District of Columbia.

but every district where the agency head performs a substantial amount of his official duties would override Congress's careful choice of words.  It would also create an enormous risk of forum shopping.  Many officials—from the Secretary of the Interior to the Director of the FBI to the Commissioner of Internal Revenue—perform their duties all over the nation.  Plaintiff's theory of venue would subject those officials to suit in judicial districts across the country in cases that have no direct connection to the districts in which they were brought.

Although §1391(e) was intended to give plaintiffs additional venue choices (*e.g.*, the plaintiff's home district and the district where the claim accrued), it was not intended to create universal venue.  *See Reuben H. Donnelley Corp. v. FTC*, 580 F.2d 264, 267 (7th Cir. 1978) (explaining that §1391(e) "was not intended to permit forum-shopping, by suing a federal official wherever he could be found, or permitting test cases far from the site of the actual controversy.") (citation omitted).   As Director Brennan does not reside in the District for purposes of § 1391(e), and Plaintiff has not pled that this action has any other connection to the District, venue is not proper in the District of Columbia.

Judges in this District have applied that reasoning in cases similar to this one.  For example, in *Hill v. Napolitano*, 839 F. Supp. 2d 180 (D.D.C. 2012), the plaintiff brought an ADEA claim against the Department of Homeland Security (DHS), the parent organization of his former employer, the Transportation Security Administration (TSA), in the District of Columbia. Although the plaintiff claimed that the DHS secretary resided in the District, the Court observed that TSA's headquarters is in the Eastern District of Virginia, the plaintiff was not a resident of the District, and the complaint did not allege that the events associated with the case occurred in the District.  *Id.* at 183.  Accordingly, the Court concluded that venue was not proper in the District under the ADEA and 28 U.S.C. § 1391(e).  *Id.*

This Court reached a similar decision in *Akers v. Gutierrez*, Case No. 07-cv-266, 2007 WL 1541500 (D.D.C. 2007) (Leon, J.).  In *Akers*, the plaintiff brought Title VII and ADEA claims in the District of Columbia against the Secretary of Commerce and the Director of the United States Patent and Trademark Office (USPTO).  *Id.* at *1.  The Court noted that, "the USPTO's principal office is located in the Eastern District of Virginia and the alleged discriminatory conduct occurred exclusively within that district," before concluding that venue was not proper in the District of Columbia under 28 U.S.C. § 1391(e).  *Id.* at *2.

As this action lacks the connections to this district required by § 1391(e), the Court should dismiss Plaintiff's Amended Complaint for lack of venue.

### B.      Transfer to the Eastern District of Virginia Is Not in the Interest of Justice

Where, as here, a plaintiff has elected to bring his claim in the wrong venue, the Court "shall dismiss" the action unless it determines that it is "in the interest of justice" to transfer it to a district where venue is proper.  28 U.S.C. § 1406(a).  The decision whether to dismiss or transfer a case that has been brought in an improper venue is committed to the sound discretion of the district court.  *See Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983). Although it is typically in the interests of justice to transfer a case that could be maintained in another district, *see Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962), justice is not served by transferring a case that will be subject to dismissal in the receiving district, *see Naartex*, 722 F.2d at 789 (upholding dismissal where plaintiff "failed to show that its claims . . . could properly be heard in any federal court").  It is appropriate for a court to dismiss rather than transfer a case where subject matter jurisdiction is lacking, or where "there are obvious substantive problems with the plaintiff's claims*." Laukus v. United States*, 691 F. Supp. 2d 119, 127 (D.D.C. 2010), *aff'd*, 442 Fed. Appx. 570 (D.C. Cir. 2011) (per curiam); *see also Phillips v.*

11

*Seiter*, 173 F.3d 609, 610-11 (7th Cir. 1999) (holding that it is appropriate for district courts to take a "peek at the merits" when deciding whether transfer is in the interests of justice); *Buchanan v. Manley*, 145 F.3d 386, 389 n.6 (D.C. Cir. 1998) (finding no abuse of discretion where district court concluded that transfer would not be in interests of justice because of "substantive problems" with plaintiff's claims).

Because of the fatal defects in Plaintiff's claim, dismissal, rather than transfer, is the appropriate remedy for Plaintiff's failure to file this case in the proper forum. As explained in detail below, Plaintiff has failed to administratively exhaust the only claim that he raises in his Amended Complaint, a claim that the CIA retaliated against him for complaining of age discrimination by creating a hostile work environment. Moreover, the only claim that Plaintiff has properly exhausted—his claim that the CIA retaliated against him by convening a Personnel Board on false grounds—is time-barred because he brought this action nearly two months after the statutory 90-day period for bringing his retaliation claim had expired. *See Fortune v. Holder*, 767 F. Supp. 2d 116, 117 & n.1 (D.D.C. 2011) (declining to consider transfer of case in response to Rule 12(b)(3) motion where plaintiff failed to timely contact EEO counselor). In addition, even if Plaintiff had exhausted his claim and brought it within the limitations period, he has failed to allege the type of severe and pervasive discriminatory conduct necessary to state a viable hostile work environment claim. Finally, Plaintiff lacks standing to pursue the relief he seeks. Plaintiff seeks reinstatement, back pay, and liquidated damages. The Court, however, cannot order reinstatement or back pay because Plaintiff has not exhausted a claim regarding the termination of this employment with the Agency, and the ADEA does not permit liquidated damages against the United States. As the Court cannot provide the relief Plaintiff seeks, he cannot establish standing to pursue his sole claim.

These fatal defects will prevent adjudication of Plaintiff's claims on the merits in any forum. Transferring this case to the Eastern District of Virginia would only delay the inevitable, while consuming the time and resources of another court. The transfer of claims, like Plaintiff's, that suffer from threshold defects is not in the interest of justice.[4] *See Boultinghouse v. Lappin*, 816 F. Supp. 2d 107, 113 (D.D.C. 2011) ("[T]ransfer is not 'in the interest of justice' where . . . success on the merits appears unlikely.").

## II.  Plaintiff Failed to Exhaust a Retaliatory Hostile Work Environment Claim

Plaintiff has administratively exhausted a single claim that, after he complained of age discrimination, the CIA retaliated by convening a Personnel Board against him. *See* Exhibit 1, CIA Final Agency Decision, p.2. That is not, however, the claim Plaintiff has asserted in his Amended Complaint. Instead, Plaintiff has alleged a claim that the CIA retaliated against him by creating a hostile work environment. ECF No. 15 at ¶131. As Plaintiff has not administratively exhausted a retaliatory hostile work environment claim, his Amended Complaint should be dismissed for failure to state a claim under Rule 12(b)(6).[5]

A plaintiff must exhaust his administrative remedies before bringing an ADEA claim against the Government. *See Koch v. Schapiro*, 699 F. Supp. 2d 3, 12 (D.D.C. 2010). Under the

---

[4] The sensitive nature of the subject matter of Plaintiff's Amended Complaint further tips the balance of interests in favor of outright dismissal rather than transfer. Plaintiff served as a covert employee of the CIA and challenges the Agency's decision to convene a Personnel Board to review his job performance. The D.C. Circuit has recognized "the difficulties associated with subjecting allegations involving CIA operations and covert operatives to judicial and public scrutiny." *Wilson v. Libby*, 535 F.3d 697, 710 (D.C. Cir. 2008). In this case, those difficulties also weigh in favor of dismissing Plaintiff's Complaint for improper venue, rather than transferring it to the Eastern District of Virginia.

[5] "Despite some confusion in this jurisdiction regarding whether a failure to exhaust administrative remedies is properly brought in a Rule 12(b)(1) motion, as a jurisdictional defect, or in a Rule 12(b)(6) motion, as a failure to state a claim, recent cases favor treating failure to exhaust as a failure to state a claim." *Gladden v. Bolden*, 802 F. Supp. 2d 209, 211-12 (D.D.C. 2011) (quotations omitted).

ADEA, a federal employee can exhaust his administrative remedies in two different ways.
"First, the employee may bring a claim directly to federal court so long as, within 180 days of the allegedly discriminatory act, he provides the EEOC with notice of his intent to sue at least 30 days before commencing suit." *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003) (citing 29 U.S.C. §§ 633a(c), (d)). "Second, the employee may invoke the EEOC's administrative process, and then sue if dissatisfied with the results." *Id*. (citing 29 U.S.C. §§ 633a(b), (c)). Plaintiff has not used either avenue to administratively exhaust his retaliatory hostile work environment claim.

Before an employee may obtain relief under the ADEA, "he must exhaust the administrative process for each discrete act of discrimination or retaliation he alleges." *Al-Saffy v. Vilsack*, 54 F. Supp. 3d 79, 84 (D.D.C. 2014) (Leon, J.); *see Mount v. Johnson*, 36 F. Supp. 3d 74, 84 (D.D.C. 2014) (surveying cases and recognizing "majority view" that plaintiff must exhaust administrative remedies for each discrete act of discrimination or retaliation before they can be brought in court). "The purpose of the administrative exhaustion requirement is to preserve judicial resources and provide the agency with notice and an opportunity to pursue an administrative resolution." *Al-Saffy*, 54 F. Supp. 3d at 84. In light of this purpose, the D.C. Circuit has directed that "[a] court cannot allow liberal interpretation of an administrative charge to permit a litigant to bypass the [] administrative process." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citation omitted).

In this case, Plaintiff exhausted only one discrete allegation of retaliation: "Your client claims discrimination based on reprisal when on 16 September 2009 he was informed that a Personnel Evaluation Board (PEB) was being convened against him on false grounds put forth by GDC management." Exhibit 1, CIA Final Decision, p.2. Plaintiff did not administratively

14

exhaust claims concerning many of the allegations in his complaint, including the termination of his employment, the submission of his novel to the Publications Board, or the CIA's alleged involvement in his relationship with his fiancée.  *See id.*; ECF No 15-2.  And, more importantly, he did not exhaust a retaliatory hostile work environment claim.

This case is similar, in many respects, to *Austin v. Am. Inst. for Research*, ---F. Supp. 3d ----, 2014 WL6845551 (D.D.C. 2014) (Leon, J.).  In *Austin*, the plaintiff alleged discrete acts of discrimination in her EEOC charge but then filed a hostile work environment claim against her employer.  *Id.* at *3.  This Court explained, however, that, "allegations of discrete actions, and 'mere reference to alleged disparate acts of discrimination against plaintiff cannot be transformed, without more, into a hostile work environment claim.'"  *Id.* (quoting *Childs–Pierce v. Util. Workers Union of Am.*, 383 F. Supp. 2d 60, 79 (D.D.C. 2005) *aff'd*, 187 F. Appx. 1 (D.C. Cir. 2006)).  It then observed that the plaintiff's EEOC charge did not give her employer fair warning that she was alleging a hostile work environment and concluded that the plaintiff had not exhausted a hostile work environment claim.  *Id.*  Just as in *Austin*, in this case, Plaintiff brought an EEOC charge against his employer alleging only a single discrete act of discrimination – the convening of Personnel Board against him on false grounds in retaliation for complaining of age discrimination – but has now brought a retaliatory hostile work environment claim.  Plaintiff's EEOC charge did not put the Agency on notice that he was alleging a hostile work environment, and he has not administratively exhausted a hostile work environment claim.

As Plaintiff has failed to administratively exhaust the only claim in his Amended Complaint, the Court should grant Defendant's motion to dismiss.

**III.     Plaintiff's Retaliation Claim is Time-Barred**

As Plaintiff filed his complaint nearly two months after the statutory 90-day period for

bringing his claim had expired, and has not shown the type of extraordinary circumstances that

warrant equitable tolling, his claim is time-barred and should be dismissed.

**A.       It is Undisputed That Plaintiff Did Not File within the Limitations Period**

Under the ADEA, an individual has 90 days after receiving a final decision from the

EEOC to file a civil action.  *Price v. Bernanke*, 470 F.3d 384, 388-89 (D.C. Cir. 2006).  "Strict

compliance with such procedural requirements guarantees fairness and 'evenhanded

administration of the law.'"  *Gill v. D.C.*, 872 F. Supp. 2d 30, 34-35 (D.D.C. 2012) (quoting

*Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).  Accordingly, "this Circuit requires strict

adherence to the 90–day requirement, such that actions brought even one day after the deadline

will be dismissed."  *Id.* at 35 (dismissing as untimely Title VII and ADEA claims that were filed

two days after the ninety-day limitations period); *see Smith v. Dalton*, 971 F. Supp. 1, 2–3

(D.D.C. 1997) (dismissing *pro se* plaintiff's Title VII and ADEA claims because suit was filed

one day after 90 day limitations period).

In this case, the EEOC issued a final decision denying Plaintiff's retaliation claim on

August 28, 2014.  The EEOC's decision letter expressly informed Plaintiff that he had 90 days

from the date he received the decision to file a civil action.  ECF No. 15-2.  "When the delivery

date is unknown, the court presumes that delivery occurred three or five days after the EEOC

issued the right-to-sue letter."  *Gill*, 872 F. Supp. 2d at 35 n.2; *see McAlister v. Potter*, 733 F.

Supp. 2d 134, 143 (D.D.C. 2010).  Based on the presumption that Plaintiff received the EEOC's

final decision on September 2, 2014, five days after it was issued, Plaintiff had until December 1,

2014, to file his complaint.  Plaintiff ultimately filed this action on January 23, 2015, one

hundred forty-three days after he received the right to sue letter and fifty-three days after the

limitations period had expired.  Because Plaintiff did not bring this action within the ADEA's

ninety-day limitations period, his claim is time-barred and should be dismissed for failure to state

a claim upon which relief can be granted.

### B.      Equitable Tolling Is Not Appropriate

In his Amended Complaint, Plaintiff concedes that he failed to file his initial complaint

within the 90-day limitations period, ECF No. 15-1 at ¶122, but asks the Court to equitably toll

the filing deadline, *id.* at ¶¶ 120-128.  Although the Court has discretion to equitably toll the

filing deadline in certain circumstances, *see Kennedy v. Whitehurst*, 690 F.2d 951, 961 (D.C. Cir.

1982), the D.C. Circuit has cautioned that, "[t]he court's equitable power to toll the statute of

limitations [should] be exercised only in extraordinary and carefully circumscribed instances."

*Mondy v. Sec'y of Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988); *Dahlman v. AARP*, 791 F. Supp.

2d 68, 77 (D.D.C. 2011) ("Equitable tolling of the procedural requirements are to be applied

sparingly and the 'hurdle is high' for those seeking such relief.') (quoting *Smith–Haynie v. D.C.*,

155 F.3d 575, 579 (D.C. Cir. 1998)).  A plaintiff who requests equitable tolling bears the burden

of establishing two elements: (1) that "he has been pursuing his rights diligently," and (2) that

"some extraordinary circumstances stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418

(2005); *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 59 n.4 (D.C. Cir. 2014).

Plaintiff has not met that burden here.

Plaintiff argues in his Amended Complaint that the Court should equitably toll the filing

deadline because he fell into a deep depression that "rendered him incapable of handling his

affairs in such a way as to be able to prepare the instant Complaint within the 90-day period

specified in the EEOC's Notice of Right to Sue letter."  ECF No. 15-1 at ¶¶121-22.  Plaintiff

adds that he had experienced the same type of deep depression eight years earlier when he was going through a divorce. *Id.* at ¶121.   He further alleges that, at some point, he began seeing a doctor and, in late November 2014, he began taking a prescribed antidepressant medication. *Id.* at ¶127.   Subsequently, he experienced a recovery sufficient to enable him to file the original complaint. *Id.* at ¶¶128.

Equitable tolling may be appropriate upon a showing that a plaintiff was *non compos mentis* - "not master of one's mind." *Dahlman*, 791 F. Supp. 2d at 77 n.7.   But "[e]quitable tolling is only appropriate on *non compos mentis* grounds when a plaintiff is completely incapable of handling his affairs and legal rights." *Perry v. U.S. Dep't of State*, 669 F. Supp. 2d 60, 66 (D.D.C. 2009) (internal citations and quotations omitted).   "It is not sufficient to show that a plaintiff was 'preoccupied, depressed, and obsessed with the events' he was experiencing." *Miller v. Rosenker*, 578 F. Supp. 2d 67, 72 (D.D.C. 2008) (quoting *Gupta v. Northrop Grumman Corp.*, 462 F. Supp. 2d 56, 60 (D.D.C. 2006)).   In addition, "[s]uffering from a 'severe panic disorder and depression' is not evidence of the type of 'total incapacity' necessary to warrant equitable tolling." *Miller*, 578 F. Supp. 2d at 72.

Plaintiff's allegations that he was depressed and was ultimately prescribed antidepressant medication, even if accepted as true, are insufficient to warrant equitable tolling. *See Vazquez-Rivera v. Figueroa*, 759 F.3d 44 (1st Cir. 2014) ("It is clear that merely to establish a diagnosis such as severe depression is not enough to demonstrate entitlement to equitable tolling."). Moreover, the allegations in his Amended Complaint show that Plaintiff was not totally incapacitated.   Plaintiff alleges that, in early November 2014, which was during the limitations period, he met with an attorney about representing him and communicated with the CIA's Office of General Counsel.   ECF No. 15 at ¶123.   He further alleges that, in late November, he started

taking prescribed antidepressant medication under the care of a physician.  *Id.* at ¶127.

Plaintiff's claims that he met with an attorney, spoke with the CIA's Office of General Counsel,

saw a physician, and began taking medication all show that he was not totally incapacitated.

In addition, Plaintiff alleges that he suffered the same type of deep depression eight years

earlier when he was going through a divorce.  *Id.* at ¶121.  But in his Amended Complaint,

Plaintiff alleges that approximately eight years earlier, in Fall 2006, he was teaching at the CIA's

main training center, *id.* at ¶33, and was selected by his managers to become a Deputy Chief, *id.*

at ¶35, "with supervisory authority over more than 80 subordinates," *id.* at ¶36.  These

allegations are plainly inconsistent with Plaintiff's claim that the type of deep depression he

experienced in Fall 2006 and again in Fall 2014 left him totally incapacitated.

Plaintiff also seeks to excuse his untimeliness by alleging that the CIA told him that he

had to sign a new secrecy agreement before Mark Zaid, an attorney Plaintiff had contacted, could

be "cleared to represent him."  *Id.* at ¶123.  He suggests that this supposed requirement prevented

him from obtaining the assistance of counsel and that, without the assistance of counsel, his

depression rendered him "unable" to file his complaint.  *Id.* at ¶126.  Even if these allegations

were true,[6] Plaintiff still would not be entitled to equitable tolling.  Litigants are not excused

from the ordinary equitable tolling standards simply because they do not have the assistance of

counsel; they still must establish both diligence and extraordinary circumstances.  *See, e.g.,*

*Holland v. Fla.*, 560 U.S. 631, 649 (2010) (*pro se* prisoner who filed habeas petition five weeks

---

[6] Emails attached the Zaid Declaration, which Plaintiff included as Attachment 3 to his Amended
Complaint, suggest that the document Plaintiff was asked to sign was a form indicating that he
"underst[ood] the security rules" associated with clearing counsel, not a new secrecy agreement.
ECF No. 15-3, p. 5 of 7.  According to the emails, such a form was required because Plaintiff
was considering hiring a new attorney.  *See id.*  Because Plaintiff has now rehired Victoria
Toensing, who had previously been cleared to represent him during the Agency's EEO process,
*see* ECF No. 9, he ultimately did not need to sign a new form.

late due to his prior attorney's misconduct still had to establish diligence and extraordinary circumstances); *Spannaus v. Fed. Election Comm'n*, 990 F.2d 643, 645 (D.C. Cir. 1993) (per curiam) (*pro se* litigant was not entitled to equitable tolling because he was "less than fully diligent").  Plaintiff has established neither condition here.

        As for diligence, Plaintiff acknowledges in his complaint that he received the EEOC's final decision letter.  ECF No. 15-1 at ¶ 120.  That letter "conspicuously," *Spannaus*, 990 F.2d at 645, informed him that he had ninety days to file suit, with the relevant text highlighted in bold: "You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision."  ECF No. 15-2 at 2 (emphasis in original).  The letter also advised Plaintiff that he could request court-appointed counsel if he did not have, or could not afford, an attorney.  *Id.*  Yet Plaintiff evidently did nothing for over two months: he apparently never asked his counsel for the administrative proceedings (Victoria Toensing, whom Plaintiff admits was already "cleared," *id.* at ¶ 125) to prepare a complaint for him, he did not seek out new counsel, he did not ask the Court to appoint counsel for him, and he did not file a complaint on his own.  Moreover, although Plaintiff claims he was impeded in his effort to "obtain the assistance" of new counsel in early November 2014, he gives no indication that he acted diligently to resolve the supposed problem.  The alleged reason for this lack of diligence was Plaintiff's depression.  *See* ECF No. 15-1 at ¶¶ 154, 160.  As explained above, however, depression is not a basis for equitable tolling and cannot excuse a lack of diligence.  Nor does Plaintiff's *pro se* status excuse his neglect.  *See Turner v. Afro-Am. Newspaper Co.*, 572 F. Supp. 2d 71, 72 (D.D.C. 2008) (explaining that "Courts strictly observe the 90-day time limit for filing employment discrimination claims, even where a pro se plaintiff

is involved"); *Smith v. Dalton*, 971 F. Supp. 1, 2-3 (D.D.C. 1997) (dismissing as untimely a pro se plaintiff's ADEA complaint filed ninety-one days after plaintiff received notice of final agency action).[7]

As for extraordinary circumstances, there may well be cases in which the government's improper interference with an opposing party's attorney-client relationship could qualify as "extraordinary." But whatever those cases may be, this is not one of them. Plaintiff has carefully worded his complaint to avoid alleging that he sought attorney Mark Zaid's assistance for this retaliatory hostile work environment suit (as opposed to the prepublication issue that is not properly part of this case) or that Plaintiff was unable to obtain adequate assistance from the attorney who was already "cleared" for his administrative proceedings (Victoria Toensing). Indeed, it is telling that Ms. Toensing is now representing Plaintiff in these proceedings. Even taking Plaintiff's allegations at face value, there is no indication that "affirmative misconduct on the part of a defendant lulled the plaintiff into inaction." *Gill*, 872 F. Supp. 2d at 36. As this is a "'garden variety claim of excusable neglect,'" which cannot justify equitable tolling, *Holland*, 560 U.S. at 633, Plaintiff's attempt to shift the blame to the CIA should be rejected.

**IV.    Plaintiff Has Failed to State a Hostile Work Environment Claim**

Even if Plaintiff had properly exhausted a retaliatory hostile work environment claim, Plaintiff has still failed to state a claim upon which relief can be granted. As an initial matter, "'an ADEA cause of action for hostile work environment has not yet been recognized in this Circuit.'" *Ware v. Hyatt Corp.*, --- F. Supp. 3d ----, 2015 WL 739857, *6 (D.D.C. Feb. 23, 2015)

---

[7] This is all the more true where, as here, the *pro se* litigant is himself an attorney (as he disclosed to the Court at the February 13, 2015 Status Conference). *Cf. Marbury Law Grp., PLLC v. Carl*, No. 09-cv-1402, 2013 WL 4583558, *1 n.1 (D.D.C. July 21, 2013) (attorneys are held to a higher standard than other *pro se* litigants). The well-drafted *pro se* complaint in this case demonstrates that Plaintiff is in no need of special solicitude. *See* ECF No. 1.

(quoting *Shipman v. Vilsack*, 692 F. Supp. 2d 113, 118 n. 3 (D.D.C. 2010)).  Yet, even assuming that a plaintiff can bring a hostile work environment claim under the ADEA, Plaintiff has failed to allege a viable hostile work environment claim here.

 To prevail on a hostile work environment claim, "a plaintiff must show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quotations omitted).  In his Amended Complaint, Plaintiff alleges a small number of discrete acts of discrimination and attempts to aggregate them into a viable claim of retaliatory hostile work environment: "The retaliation includes Charles' CIA managers submitting false statements to have him illegally fired and their interference with Charles' relationship with his then-fiancée and with the publication of Charles' work of fiction."  ECF No. 15 at ¶3.  But, "[d]iscrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult."  *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003).  Accordingly, "'as a general matter' courts in this Circuit 'frown on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader hostile work environment claim.'"  *Dudley v. WMATA*, 924 F. Supp. 2d 141, 168 (D.D.C. 2013) (quoting *Baloch v. Norton*, 517 F. Supp. 2d 345, 364 (D.D.C. 2007)).

 Courts are particularly wary when, as here, a plaintiff attempts to sweep claims that he has not administratively exhausted under the rubric of a hostile work environment claim. *Patterson v. Johnson*, 391 F. Supp. 2d 140, 146 (D.D.C. 2005) *aff'd,* 505 F.3d 1296 (D.C. Cir. 2007) ("plaintiff cannot cure his failure to timely exhaust his complaints about these incidents by

sweeping them under the rubric of a hostile work environment claim"); *Rattigan v. Gonzales*, 503 F. Supp. 2d 56, 82 (D.D.C. 2007) ("[C]obbling together a number of distinct, disparate acts will not create a hostile work environment. . . .  This is particularly true here because plaintiff failed to exhaust administrative remedies for many of the discrimination and retaliation claims that he now incorporates into a hostile work environment claim.").

Plaintiff's attempt to convert his allegations of discrete acts of retaliation into a hostile work environment claim is particularly misplaced here, where two of the central acts of discrimination allegedly occurred after his employment was terminated and thus cannot contribute to a hostile work environment as a matter of law.  Plaintiff alleges that he was fired in December 2010.  ECF No. 15 at ¶93.  He, nevertheless, attempts to establish a hostile work environment by alleging that the CIA interfered with his relationship with his fiancée in March 2011, four months after the termination of his employment.  ECF No. 15 at ¶97.  Similarly, Plaintiff appears to allege that the Publications Board's decision not to allow him to publish his book supports his hostile work environment claim, even though he submitted his book for review in January 2014, more than three years after his employment was terminated.  ECF No. 15 at ¶101.  As Plaintiff was no longer employed by the agency, these allegations, even if accepted as true, cannot support a hostile work environment claim.  *See, e.g., Backhanon v. Huff & Assoc. Constr. Co.,* 506 F. Supp. 2d 958, 968 (M.D. Ala. 2007) (recognizing that allegations involving post-employment actions are insufficient to support a hostile work environment claim because "a hostile work environment claim requires that the employee *be subjected to* the environment") (emphasis in original).

As Plaintiff has failed to repackage his discrete (and largely unexhausted) retaliation claims into a viable retaliatory hostile work environment claim, the Court should dismiss his complaint for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

**V.      Because the Court Cannot Award the Relief Plaintiff Seeks, He Lacks Standing to Pursue His Claims**

When a plaintiff brings suit in federal court, he bears the burden of establishing that he has standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  To meet that burden, a plaintiff must show that (1) he has suffered an "injury in fact" (2) that is fairly traceable to the challenged action of the defendant and (3) can likely be redressed by a favorable decision. *Id.* at 560-61.  Even if Plaintiff could meet the first two requirements, he cannot meet the third.

In his Amended Complaint, Plaintiff seeks three forms of relief.  First, he seeks to "be reinstated with retroactive promotions, salary, and benefits."  ECF No. 15, Prayer for Relief 1. Second, he seeks "back pay in amount to be calculated at trial." *Id.* at Prayer for Relief 2.  But as explained above, Plaintiff has not exhausted a claim related to the termination of his employment.  Indeed, the only claim that Plaintiff has properly exhausted is a retaliation claim concerning his initial referral to the Personnel Board.  Because Plaintiff has not exhausted a challenge to the CIA's ultimate decision to terminate his employment, the Court could not order reinstatement with retroactive promotions, salary and benefits or award back pay.

Third, Plaintiff seeks "liquidated damages in an amount to be calculated at trial." *Id.* at Prayer for Relief 3.  But the ADEA does not provide for liquidated damages in suits against the United States. *Rattner v. Bennett*, 701 F. Supp. 7, 9 (D.D.C. 1998) ("The ADEA's liquidated damages provision does not provide a remedy in suits brought by federal employees."); *Smith v. Office of Pers. Mgmt.*, 778 F.2d 258, 263-64 (5th Cir. 1985), *cert. denied*, 476 U.S. 1105 (1986) ("There is no mention of liquidated damages in section 633a, the self-contained section of the

24

ADEA applicable to federal employees…[and] [w]e refuse to imply such a remedy in a suit against the sovereign.").

As Plaintiff has only exhausted a single claim that the CIA retaliated against him for complaining of age discrimination by convening a Personnel Board against him on false grounds, the Court cannot grant him reinstatement, back pay or liquidated damages.  Accordingly, because Plaintiff cannot establish that his alleged injury can likely be redressed by a favorable decision and lacks standing to pursue his claim, his claim should be dismissed pursuant to Rule 12(b)(1).

## CONCLUSION

For the reasons set forth above, the Court should grant Defendant's motion and dismiss Plaintiff's Amended Complaint.

Dated: June 18, 2015                                    Respectfully submitted,

                                                                                            BENJAMIN C. MIZER
                                                                                           Acting Assistant Attorney General

RONALD C. MACHEN JR.
United States Attorney

JOSHUA E. GARDNER
Assistant Branch Director

*/s/ Ryan B. Parker*
RYAN B. PARKER (UT Bar No. 11742)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Telephone: (202) 514-4336
Email: ryan.parker@usdoj.gov

Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

MACK L. CHARLES,                                )
                                                )
                          Plaintiff,            )
                                                )
            v.                                  )   Civil Action No. 1:15-cv-00121 (RJL)
                                                )
JOHN O. BRENNAN, Director of                    )
the Central Intelligence Agency, *et al.*,      )
                                                )
                          Defendants.           )
_____        )

**[PROPOSED] ORDER**

        For the reasons set forth in Defendant's motion to dismiss and the accompanying

memorandum, the Court hereby grants Defendant's motion and dismisses Plaintiff's Amended

Complaint.


Date:_____            _____

                                        District Court Judge

1