**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MACK L. CHARLES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Case No. 15-00121 (RJL)** |
| ) | |
| **JOHN O. BRENNAN,** Director of the ) | |
| Central Intelligence Agency,[1] ) | |
| ) | |
| **Defendant.** ) | |

**FILED**

MAR 3 0 2016

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**MEMORANDUM OPINION**

(March **30**, 2016) [Dkt. # 16]

Former Central Intelligence Agency Non-Official Cover ("NOC") Operations

Officer Mack L. Charles[2] ("plaintiff") brought this suit alleging managers working under

CIA Director John O. Brennan ("defendant") violated the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 633a, by creating a hostile work environment

by retaliating against him because he complained of age discrimination. *See generally*

Am. Compl. [Dkt. # 15].   Plaintiff initially brought this action *pro se*. *See* Compl. [Dkt.

# 1].   After a motion to dismiss was filed, plaintiff obtained counsel and filed an amended

complaint. *See* Am. Compl.   Currently before the Court is defendant's Motion to

Dismiss Plaintiff's Amended Complaint [Dkt. # 16].   Upon consideration of the

---

[1] Both parties agree the only defendant in the remaining Count is CIA Director John O. Brennan and any reference to other potential defendants through use of "*et al.*" is not appropriate. *See* Pl.'s Mem. in Opp'n to the Gov't's Mot. to Dismiss ("Pl.'s Opp'n") 1 n.1 [Dkt. # 18].

[2] The plaintiff has used aliases for himself and other CIA employees, which the Court adopts here for ease of reference.

1

pleadings, record, and relevant law, I find that plaintiff's claims are time-barred.

Therefore, defendant's motion is GRANTED, and all claims are dismissed.

## BACKGROUND

Plaintiff worked at the CIA as a Non-Official Cover ("NOC") Operations Officer from 1996 until his termination in 2010. Am. Compl. ¶¶ 19, 93. He received high commendations and served without incident with his superiors until the following events that gave rise to this case. Am. Compl. ¶¶ 19-47. In February 2008, Charles began dating Nina, a fellow NOC. Am. Compl. ¶ 48. He was 47 and she was 26, Am. Compl. ¶ 48, but their relationship did not violate any CIA rule or policy, Am. Compl. ¶ 49. In March 2009, plaintiff's and Nina's superior, Eric P., spoke to Nina regarding her relationship with plaintiff for the first time, asking if she knew plaintiff had been married and divorced previously, and stating he had a daughter her age and "kn[e]w what's right for [Nina]." Am. Compl. ¶¶ 50-51. Charles and Nina became engaged in April 2009, after which Eric P. and Imelda, another superior, "continued to interfere with their relationship" by, among other things, proffering geographically distant assignments to them. Am. Compl. ¶ 53. Perceiving discrimination based on his age, plaintiff emailed his managers on May 8, 2009, "warning that they were violating his EEO rights and demanding they cease all such efforts." Am. Compl. ¶ 54. Three days later, his managers "initiated a 'security scrub' of his entire employment record to search for derogatory information," which continued through July 2009. Am. Compl. ¶¶ 55, 58-59. Plaintiff alleges this security scrub marked the beginning of a "series of conspiratorial

actions – constituting one continuing violation – in relation for Charles' expression of his intent to defend his rights under EEO laws and regulations." Am. Compl. ¶ 56.

On June 10, 2009, plaintiff filed an EEO complaint alleging age discrimination. Am. Compl. ¶ 57. On August 5, 2009, in a request containing false and misleading statements regarding the plaintiff, his managers requested that a Personal Evaluation Board ("PEB") be convened to evaluate plaintiff's conduct. Am. Compl. ¶¶ 61-66. The PEB met on October 28, 2009 and declined to take action against plaintiff. Am. Compl. ¶¶ 72-73. Thereafter, in a continued effort to have him fired, plaintiff's superior Imelda obtained a false memorandum from "Chester" who had once supervised plaintiff. Am. Compl. ¶¶ 74-75. The PEB reconvened on May 5, 2010 and, based on the allegedly false memorandum, recommended that plaintiff be fired. Am. Compl. ¶¶ 89-92. Plaintiff appealed the PEB's recommendation but was fired in December 2010. Am. Compl. ¶ 93.

On September 16, 2009—after the PEB request, but before it convened—Plaintiff saw the false and misleading allegations in the request materials, then filed an EEO complaint alleging retaliation. Am. Compl. ¶¶ 67-68. The case was decided against him, plaintiff asked for reconsideration, and then, by letter dated August 28, 2014, the EEOC informed him that his request for reconsideration was denied. Am. Compl. Ex. 2, EEOC's Notice of Right to Sue Letter [Dkt. # 15-2]. The letter stated "you have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision." *Id.* at 2. Though plaintiff does not specify the date he received the letter, he concedes he failed to meet the 90-day deadline. Am. Compl. ¶ 122. Plaintiff alleges this ruling against him, combined with

notice the same day that he could not publish a satirical novel he wrote about the CIA,[3] as well as the realization he may never reconnect with Nina, caused him to fall into a "deep depression" that "rendered him incapable of handling his affairs in such a way as to be able to prepare his initial Complaint within the 90-day period specified in the EEOC's Notice of Right to Sue letter." Am. Compl. ¶¶ 121-22.  Plaintiff began to take antidepressant medication in November 2014.  Am. Compl. ¶ 127.

Plaintiff "attempted, in early November 2014, to obtain the assistance of counsel" Mark Zaid, but "the CIA's Office of General Counsel ("OGC") told Charles [Zaid] had to sign a new secrecy agreement before Zaid could be cleared," Am. Compl. ¶ 123, and told Zaid that Charles had to "sign a new secrecy agreement," Am. Compl. ¶ 124.  Plaintiff alleges he was "unable to go forward with the Complaint on his own" at that time, Am. Compl. ¶ 126, but after taking medication his depression subsided enough to enable him to prepare and file his initial complaint *pro se* on January 23, 2015.  Am. Compl. ¶ 128.  Since that time plaintiff obtained counsel and filed an amended complaint.

## STANDARD OF REVIEW

The Court may dismiss a complaint for failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss under Rule 12(b)(6), the court must "liberally" construe the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts

---

[3] Plaintiff alleges he sent a manuscript to the CIA Publications Review Board (PRB) for the requisite approval to publish a satirical novel he wrote under a pen name about the CIA.  Am. Compl. ¶¶ 101, 103-04.  He claims that after meeting with representatives from the PRB to discuss their refusal to publish his book, it was clear his superior, Imelda, had led the charge to disallow publication of any part of the novel. Am. Compl. ¶ 102.

alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal citation and quotation marks omitted). However, in considering the pleadings, the Court is not required to "accept legal conclusions cast in the form of factual allegations," or to rely on inferences "unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Thus, to withstand dismissal, the allegations, when read in a light most favorable to the plaintiff, must "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## ANALYSIS

Because plaintiff concedes he brought this action well past the 90-day statutory deadline, the Court must determine whether plaintiff alleges facts sufficient to show the type of extraordinary circumstances that warrant equitable tolling or equitable estoppel. Unfortunately for plaintiff, I find he has not.

The ADEA permits federal employees to choose one of two avenues to pursue an age discrimination claim. *See, e.g., Stevens v. Dep't of Treasury*, 500 U.S. 1, 5-6 (1991). First, an employee may pursue his claim through the agency's administrative process "and then file a civil action in federal district court if he is not satisfied with his administrative remedies." *Id.* (citing 29 U.S.C. § 633a(b)-(c)). Alternatively, the employee may bypass the agency's administrative process and instead "present the merits of his claim to a federal court in the first instance." *Stevens,* 500 U.S. at 6 (citing 29 U.S.C. § 633a(d)). Failure to comply with either of the two designated procedures constitutes a failure to exhaust administrative remedies and bars a federal employee from bringing suit in federal court. *See Rann v. Chao*, 346 F.3d 192, 198-99 (D.C. Cir. 2003)

(upholding the district court's dismissal for failure to exhaust where a federal employee failed to comply with the requirements of § 633a(d), so he could not "proceed to federal court by that route").

Under the agency-then-court option, a federal employee has 90 days after receiving a final decision from the EEOC to file a civil action. *See Price v. Bernanke*, 470 F.3d 384, 388-89 (D.C. Cir. 2006). "[S]trict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980). Accordingly, "this Circuit requires strict adherence to the 90-day requirement, such that actions brought even one day after the deadline will be dismissed." *Gill v. District of Columbia*, 872 F. Supp. 2d 30, 35 (D.D.C. 2012) (dismissing as untimely Title VII and ADEA claims filed two days after 90-day deadline); *see Smith v. Dalton*, 971 F. Supp. 1, 2-3 (D.D.C. 1997) (dismissing *pro se* plaintiff's Title VII and ADEA claims because suit was filed one day after 90-day deadline). Because the 90-day time period is not a jurisdictional bar, but rather a statute of limitations, it is subject to waiver, estoppel, and equitable tolling. *Saltz v. Lehman*, 672 F.2d 207, 208 (D.C. Cir. 1982).

Plaintiff concedes he missed the 90-day deadline set forth in the EEOC's decision denying plaintiff's retaliation claim dated August 28, 2014, Am. Compl. ¶ 122, so the only question is whether this is one of the "extraordinary and carefully circumscribed instances" in which the Court should exercise its equitable power to overcome plaintiff's

untimeliness.[4] *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988). The party requesting that a statutory deadline be equitably tolled bears the burden of persuasion. *See Saltz*, 672 F.2d at 209. While stylized as an equitable tolling challenge, plaintiff appears to invoke both equitable tolling and the separate but related doctrine of equitable estoppel to excuse his tardy filing. "Equitable tolling permits a plaintiff to avoid the bar of the limitations period if despite all due diligence she is unable to obtain vital information bearing on the existence of her claim." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C. Cir. 1998). Equitable estoppel, on the other hand, "prevents a defendant from asserting untimeliness where the *defendant* has taken active steps to prevent the plaintiff from litigating in time." *Currier v. Radio Free Eur./Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998). Here, plaintiff's allegations fall far short of satisfying either standard.

Plaintiff invokes equitable tolling on the grounds that he "fell into a deep depression" that prevented him from filing during the 90-day deadline, Am. Compl. ¶¶ 121-22, but this proposition finds little support in the law.[5] A party seeking equitable tolling must establish (1) "he has been pursuing his rights diligently," and (2) "some extraordinary circumstances stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). "When a deadline is missed as a result of a garden variety claim of excusable

---

[4] To the extent plaintiff asserts that the single count in his Amended Complaint comprises multiple claims that may fall outside the scope of the claim he pursued through the administrative framework of the CIA EEO and the EEOC, I address that argument below.

[5] It finds such little legal support that plaintiff appears to have abandoned this argument in his briefing. *See* Pl.'s Opp'n 21-23 (failing to bring up any argument regarding his depression in the equitable tolling section). While this is grounds for concession, *see Howard v. Locke*, 729 F. Supp. 2d 85, 87 (D.D.C. 2010), I evaluate the underlying allegations nonetheless.

neglect or a simple miscalculation, equitable tolling is not justified." *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014) (internal quotation marks omitted). Plaintiff's threadbare allegations regarding his depression are insufficient to justify equitable tolling. "It is not sufficient to show that a plaintiff was preoccupied, depressed, [or] obsessed with the events he was experiencing." *Miller v. Rosenker*, 578 F. Supp. 2d 67, 72 (D.D.C. 2008) (internal quotation marks omitted). One *can* justify equitable tolling by showing he was *non compo mentis*, meaning "completely incapable of handling his affairs and legal rights," *id.* at 71-72, but that is simply not the case here. Plaintiff's insistence that his depression "rendered him incapable of handling his affairs in such a way as to be able to prepare his initial Complaint within the 90-day period," Am. Compl. ¶ 122, is a conclusory statement undermined by the facts he alleges. Not only is the complaint bereft of facts suggesting he was in fact incapable of meeting the 90-day deadline, but plaintiff admits he was capable enough to meet with an attorney in early November 2014, *before the expiration of the 90 days*, to examine the possibility of representing him in a civil suit. Am. Compl. ¶ 123. The unremarkable facts of this case cannot justify equitable tolling.

   Plaintiff's equitable estoppel argument also fails. Plaintiff argues that the CIA's imposition of an "unprecedented security requirement" for him to obtain counsel constituted "misconduct [that] directly contributed to [plaintiff's] tardiness in filing suit." Pl.'s Opp'n. 22. While the parties refer to this argument as one for equitable tolling, it falls under the rubric of equitable estoppel, which "prevents a defendant from asserting untimeliness where the *defendant* has taken active steps to prevent the plaintiff from

litigating in time." *Currier*, 159 F.3d at 1367.  Semantics aside, plaintiff fails to meet the high burden to show defendant's alleged misconduct prevented him from filing suit in a timely fashion.  Plaintiff alleges, in relevant part, "[w]hen Charles attempted, in early November 2014, to obtain the assistance of counsel – Washington, D.C., attorney Mark Zaid – and have Zaid cleared to represent him, the CIA's Office of the General Counsel (OGC) told Charles that he had to sign a new secrecy agreement before Zaid could be cleared" and that "this requirement was unprecedented."  Am. Compl. ¶¶ 122, 124.  Even assuming the CIA did in fact require an unprecedented new secrecy agreement that prevented access to that particular attorney,[6] Charles utterly fails to allege how the CIA's actions impeded the filing of either a *pro se* complaint or a complaint prepared by a different attorney within the 90-day time period.  *See generally* Am. Compl.; *see also Spannaus v. Fed. Election Comm'n*, 990 F.2d 643, 645 (D.C. Cir. 1993) (per curiam) (*pro se* litigant not entitled to equitable tolling because he was "less than fully diligent").  Indeed, plaintiff ultimately filed his original complaint *pro se* and is now represented by Victoria Toensing, who plaintiff concedes was not confronted with additional security requirements as she previously represented him.  Pl.'s Opp'n 22.  Because plaintiff fails to demonstrate the extraordinary circumstances necessary to excuse his untimely filing, I must dismiss his claim as time-barred.

---

[6] This allegation seems implausible.  According to emails plaintiff attached to his Amended Complaint, plaintiff was asked to sign a routine document indicating he "underst[ood] the security rules" associated with clearing counsel—not a "new secrecy agreement"—because plaintiff was considering hiring a new attorney.  Am. Compl. Ex. 3 at 5 [Dkt. # 15-3].  Plaintiff concedes no such security requirements were imposed in connection with his current counsel who previously represented him.  Pl.'s Opp'n 22.

To the extent plaintiff alleges any ADEA claim here distinct from that pursued administratively, it must also be dismissed.  While defendant contends (and the complaint suggests) plaintiff's single-count complaint contains a single claim for retaliation by creating a hostile work environment, *see* Am. Compl. ¶ 131 ("All the events described above constitute a hostile work environment created in retaliation for Charles' protected EEO activity."), in his opposition plaintiff suggests he is bringing at least two distinct employments claims of hostile work environment and retaliation, *see* Pl.'s Opp'n 16. Setting aside plaintiff's failure to identify which alleged actions constitute discrete claims of discrimination and which ones support his hostile work environment claim, the undisputed facts show plaintiff raised and exhausted only one retaliation claim through the administrative process, which plaintiff appeals here.  *See* Am. Compl. Ex. 2, at 1 (denying Charles' request for reconsideration of EEOC's denial of his claim, noting the previous decision found "there was no showing that the referral to the Personal Evaluation Board (PEB) was based on Complainant's EEO complaint").  Even assuming plaintiff properly stated any separate claim here, to the extent it falls within the scope of EEOC's decision it would be time-barred for the reasons stated above.  And if the claim falls outside the scope of the EEOC case, it would be time-barred still.  To bring an ADEA claim directly to federal court, rather than through the administrative agency first, a plaintiff must file notice of intent to sue with the EEOC within 180 days "after the alleged unlawful practice occurred." 29 U.S.C. § 633a(d).  Then the plaintiff must wait at least 30 days after filing notice before commencing suit.  *Id.*  In the complaint plaintiff alleges various steps he took to pursue administrative remedies with the CIA EEO and

the EEOC.  *See* Am. Compl. ¶¶ 57, 68, 118.  Noticeably absent is any allegation that he

notified the EEOC that he intended to file suit in federal court, let alone within 180 days

of any allegedly discriminatory action.  *See generally* Am. Compl.  Accordingly, none of

plaintiff's ADEA claims can be pursued in federal court.

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's Motion to Dismiss

Plaintiff's Amended Complaint.  An Order consistent with this decision accompanies this

Memorandum Opinion.

RICHARD J. LEON
United States District Judge